Frank **WILKINSON**, Appellant,

v.

**UNITED STATES** of America,
Appellee.

No. 17723.

United States Court of Appeals
Fifth Circuit.

Dec. 14, 1959.

Rehearing Denied Jan. 14, 1960.

Rowland Watts, New York City, for appellant.

J. Robert Sparks, Asst. U. S. Atty., Charles D. Read, Jr., Acting U. S. Atty., Atlanta, Ga., for appellee.

Before HUTCHESON, CAMERON and JONES, Circuit Judges.

JONES, Circuit Judge.

It is provided, among other things, by Rule XI of the House of Representatives that:

"The Committee on Un-American Activities, as a whole or by subcommittee, is authorized to make from time to time investigations of (i) the extent, character, and objects of un-American propaganda activities in the United States, (ii) the diffusion within the United States of subversive and un-American propaganda that is instigated from foreign countries or of a domestic origin and attacks the principle of the form of government as guaranteed by our Constitution, and (iii) all other questions in relation thereto that would aid Congress in any necessary remedial legislation."

A Subcommittee of the Committee on Un-American Activities scheduled hearings in Atlanta, Georgia. At the opening session on July 29, 1958, Representative Francis E. Walter, Chairman of the Committee presided and made a statement which included the following:

"The hearings which begin today in Atlanta are in furtherance of the powers and duties of the Committee on Un-American Activities, pursuant to Public Law 601 of the 79th Congress, which not only establishes the basic jurisdiction of the committee but also mandates this committee, along with other standing committees of the Congress, to exercise continuous watchfulness of the execution of any laws the subject matter of which is within the jurisdiction of the committee.

"In response to this power and duty, the Committee on Un-American Activities is continuously in the process of accumulating factual information respecting Communists, the Communist Party, and Communist activities which will enable the committee and the Congress to appraise the administration and operation of the Smith Act [18 U.S.C.A. § 2385], the Internal Security Act of 1950 [50 U.S.C.A. § 781 et seq.], the Communist Control Act of 1954 [50 U.S.C.A. § 841 et seq.], and numerous provisions of the Criminal Code relating to espionage, sabotage, and subversion. In addition, the committee has before it numerous proposals to strengthen our legislative weapons designed to protect the internal security of this Nation.

"In the course of the last few years, as a result of hearings and investigations, this committee has made over 80 separate recommendations for legislative action. Legislation has been passed by the Congress embracing 35 of the committee recommendations and 26 separate proposals are currently pending in the Congress on subjects covered by other committee recommendations. Moreover, in the course of the last few years numerous recommendations made by the committee for ad-

ministrative action have been adopted by the executive agencies of the Government.

"The hearings in Atlanta are in furtherance of a project of this committee on current techniques of the Communist conspiracy in this Nation. Today, the Communist Party, though reduced in size as a formal entity, is a greater menace than ever before. It has long since divested itself of unreliable elements. Those who remain are the hard-core, disciplined agents of the Kremlin on American soil. Most of the Communist Party operation in the United States today consists of underground, behind-the-scenes manipulations. The operation is focused at nerve centers of the Nation and masquerades behind a facade of humanitarianism."

The appellant, who had been subpoenaed as a witness, appeared at the hearing on July 30, 1958, was sworn as a witness, answered a question as to his name and was asked to state his residence and to give his occupation. His response was, "As a matter of conscience and personal responsibility, I refuse to answer any questions of this committee." He stated that he was not represented by counsel but knew that he had the privilege of counsel. He was next asked, "Are you now a member of the Communist Party?" His answer again was, "As a matter of conscience and personal responsibility, I refuse to answer any questions of this Committee". At this point the Committee's Staff Director undertook to state the reasons for and pertinency, and relevancy of the question asked and other questions to be asked. Because the pertinency vel non of the question is a major issue on the appeal, it seems desirable to set forth the Staff Director's statement in the margin.[1] The appellant

1. "Now, sir, I should like to make an explanation to you of the reasons, the pertinency, and the relevancy of that question and certain other questions which I propose to propound to you; and I do so for the purpose of laying a foundation upon which I will then request the chairman of this subcommittee to order and direct you to answer those questions.

"The Committee on Un-American Activities has two major responsibilities which it is undertaking to perform here in Atlanta.

"Responsibility number 1, is to maintain a continuing surveillance over the administration and operation of a number of our internal security laws. In order to discharge that responsibility the Committee on Un-American Activities must undertake to keep abreast of techniques of Communists' operations in the United States and Communist activities in the United States. In order to know about Communist activities and Communist techniques, we have got to know who the Communists are and what they are doing.

"Responsibility number 2, is to develop factual information which will assist the Committee on Un-American Activities in appraising legislative proposals before the committee.

"There are pending before the committee a number of legislative proposals which undertake to more adequately cope with the Communist Party and the Communist conspiratorial operations in the United States. H.R. 9937, is one of those. Other proposals are pending before the committee not in legislative form yet, but in the form of suggestions that there be an outright outlawry of the Communist Party; secondly, that there be registrations required of certain activities of Communists; third, that there be certain amendments to the Foreign Agents Registration Act [22 U.S.C.A. § 611 et seq.] because this Congress of the United States has found repeatedly that the Communist Party and Communists in the United States are only instrumentalities of a Kremlin-controlled world Communist apparatus. Similar proposals are pending before this committee.

"Now with reference to pertinency of this question to your own factual situation, may I say that it is the information of this committee that you now are a hard-core member of the Communist Party; that you were designated by the Communist Party for the purpose of creating and manipulating certain organizations, including the Emergency Civil Liberties Committee, the affiliate organizations of the Emergency Civil Liberties Committee, including a particular committee in California and a particular committee in Chicago, a committee—the name of which is along the line of the committee for cultural freedom, or some-

again refused to answer the question. The statement of the Staff Director was followed by a supplemental statement of Representative Edwin E. Willis, Chairman of the Subcommittee, who ordered and directed the appellant to answer whether he was a Communist. There was this response, "I am refusing to answer any questions of this Committee." Further explanations by members of the Committee or its Staff Director were made; further questions were asked which the appellant was ordered to answer; and these were met by the reiterated statements of the appellant that he was answering no questions of the Committee.

The reasons of the appellant for his refusal to answer any of the Committee's questions were given by him at the Committee hearing in the following statement:

"I challenge, in the most fundamental sense, the legality of the House Committee on Un-American Activities. It is my opinion that this committee stands in direct violation by its mandate and by its practices of the first amendment to the United States Constitution. It is my belief that Congress had no authority to establish this committee in the first instance, nor to instruct it with the mandate which it has.

"I have the utmost respect for the broad powers which the Congress of the United States must have to carry on its investigations for legislative purposes. However, the United States Supreme Court has held that, broad as these powers may be, the Congress cannot investigate into an area where it cannot legislate, and this committee tends, by its mandate and by its practices, to investigate into precisely those areas of free speech, religion, peaceful association and assembly, and the press, wherein it cannot legislate and therefore it cannot investigate.

"I am, therefore, refusing to answer any questions of this committee."

The appellant was indicted, tried, convicted and sentenced for his refusal to answer the question "Are you now a member of the Communist Party?" The appellant asks us to reverse his convic-

---

thing of that kind. I don't have the name before me at the instant.

"It is the information of the committee or the suggestion of the committee that in anticipation of the hearings here in Atlanta, Georgia, you were sent to this area by the Communist Party for the purpose of developing a hostile sentiment to this committee and to its works for the purpose of undertaking to bring pressure upon the United States Congress to preclude these particular hearings. Indeed it is the fact that you were not even subpoenaed for these particular hearings until we learned that you were in town for that very purpose and that you were not subpoenaed to appear before this committee until you had actually registered in the hotel here in Atlanta.

"Now, sir, if you will tell this committee whether or not, while you are under oath, you are now a Communist, we intend to pursue that area of inquiry and undertake to solicit from you information respecting your activities as a Communist on behalf of the Communist Party, which is tied up directly with the Kremlin; your activities from the stand-point of propaganda; your activities from the standpoint of undertaking to destroy the Federal Bureau of Investigation and the Committee on Un-American Activities, because indeed this committee issued a report entitled 'Operation Abolition,' in which we told something, the information we then possessed, respecting the efforts of the Emergency Civil Liberties Committee, of which you are the guiding light to destroy the F.B.I. and discredit the director of the F.B.I. and to undertake to hamstring the work of this Committee on Un-American Activities.

"So if you will answer that principal question, I intend to pursue the other questions with you to solicit information which would be of interest—which will be of vital necessity, indeed—to this committee in undertaking to develop legislation to protect the United States of America under whose flag you, sir, have protection.

"Now please answer the question: Are you now a member of the Communist Party?"

tion. On May 8, 1959, the appellant filed a Statement of Points on Appeal, saying that he intended to rely on the following:

"1. The statute and resolution establishing the Committee are unconstitutional on their face and as applied to appellant in that they invade appellant's constitutional rights under the First Amendment in respect of his freedom of speech, political and other association and communication; under the Fifth Amendment in that they provide a constitutionally vague and incomplete standard for inquiry and prosecution; under the Sixth Amendment in that they fail to inform him of the nature and cause of the accusation made against him; and under the Ninth and Tenth Amendments in that they invade rights and powers retained by the people and reserved to the people.

"2. The legislative inquiry and the resulting conviction were unconstitutional and unlawful because of an unlawful purpose to expose appellant."

These are entirely in keeping with the appellant's position at the hearing. Subsequent to the taking of the appeal in this cause but before briefs were filed, the opinion in the Barenblatt case [2] was rendered and a conviction was affirmed for refusal to answer questions of a subcommittee of the House Un-American Activities Committee, including the question, "Are you now a member of the Communist Party?" The same contentions were made in the Barenblatt case as are urged here, and there they were resolved against the position asserted by the appellant. It will follow, therefore, that unless there be something in the case before us to distinguish it from Barenblatt, our decision must be an affirmance.

The defendant in the Barenblatt case was a college professor and an inquiry was being undertaken into Communist infiltration into education. The appellant here admitted that he was engaged in aggressive opposition to the continued functioning of the Committee. The Committee had been informed that the appellant was a hard-core Communist, and he was attempting as a Communist activity to develop hostility to the Committee and its investigations; hence it was within the province of the Committee to make inquiries to ascertain whether Un-American Communist influences were attempting to weaken the Government by impeding and crippling the operation of its legislative branch. As was said in the Barenblatt opinion, " * * * in pursuance of its legislative concerns in the domain of 'national security' the House has clothed the Un-American Activities Committee with pervasive authority to investigate Communist activities in this country". 360 U. S. 109, 118, 79 S.Ct. 1081, 1088. Included in that pervasive authority is the power to investigate activities directed to interference with the legislative processes and their functioning. The Congress is not prohibited by the First Amendment guaranty of the right to petition the Government for redress of grievances from exercising measures of self-protection in requiring disclosures of lobbying activities. United States v. Harriss, 347 U.S. 612, 74 S.Ct. 808, 98 L.Ed. 989. Since legislation in the area may be enacted, investigations by legislative agencies is authorized.

The activities in which the appellant was believed to be participating presented a more direct threat to the national security than those of which Barenblatt was suspected. The decision in the Barenblatt case is controlling here. The judgment of the district court is

Affirmed.

2. Barenblatt v. United States, 360 U.S. 109, 79 S.Ct. 1081, 3 L.Ed.2d 1115.